```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


CRUM & FORSTER SPECIALTY       *
INSURANCE COMPANY              *
                               *
v.                             *   Civil Action No. WMN-14-542
                               *
GEMCRAFT HOMES, INC.           *
                               *
*   *   *   *   *   *   *   *   *   *   *   *   *
                               *
NATIONWIDE MUTUAL INSURANCE    *
COMPANY                        *
                               *
v.                             *   Civil Action No. RDB-14-1464
                               *
GEMCRAFT HOMES, INC.           *
                               *
*   *   *   *   *   *   *   *   *   *   *   *   *
```

**MEMORANDUM**

Pending before the Court in these consolidated cases is a Motion to Dismiss or Stay, ECF No. 13, filed by Defendant Gemcraft Homes, Inc. ("Gemcraft"). Only Plaintiff Crum & Forster Specialty Insurance Company ("Crum & Forster") has opposed the Motion; Plaintiff Nationwide Mutual Insurance Company ("Nationwide") has not. For the reasons stated herein, the Court determines that no hearing is necessary, Local Rule 105.6, and the Motion will be granted.

These declaratory judgment actions arise out of underlying lawsuits pending against Gemcraft and its subcontractors in the Circuit Court of Jefferson County, West Virginia ("the underlying litigation"). Gemcraft and its subcontractors built,

1

at various times between April 2008 and April 2012, homes near Inwood, West Virginia.  While constructing those homes, Gemcraft and its subcontractors allegedly failed to install functional passive radon removal systems, as required by the applicable building codes.  As a result, the plaintiffs in the underlying litigation seek damages for, among other things, emotional distress and medical monitoring.

Gemcraft, a citizen of Maryland, was insured under several consecutive insurance policies spanning the relevant time period.  Nationwide issued a commercial general liability policy covering the time period from July 20, 2005, to July 20, 2008.  From July 20, 2008 to July 20, 2009, and from July 20, 2009, to July 20, 2010, Gemcraft was insured under two consecutive one-year commercial general liability policies issued by Crum & Forster.  Finally, Gemcraft purchased, from non-party Firstline National Insurance Company ("Firstline"), which is a Maryland corporation, multiple commercial liability policies covering the period from July 20, 2010, through July 20, 2014.  See ECF No. 13-2.

This case is also, apparently, related to a fourth insurer, Erie Insurance Exchange ("Erie"), which issued a commercial general liability insurance policy to one of Gemcraft's subcontractors, North Star Foundations, Inc. ("North Star"), beginning on April 15, 2004, and spanning throughout all

2

relevant time periods. Gemcraft filed a cross-claim in the underlying litigation against North Star, contending that Gemcraft is entitled to indemnification or contribution against North Star for all or part of the allegations in the suit. On February 20, 2014, Erie filed an action, Erie Ins. Exch. v. North Star Foundations, Inc. et al., No. 10-C-14-000411, in the Circuit Court for Frederick County, Maryland, seeking a declaration that it has no obligation to defend or indemnify North Star or Gemcraft as an "additional insured" under the policies issued to North Star. Gemcraft has since joined Crum & Forster, Nationwide, and Firstline in the Frederick County action.

Within days of the filing of the Frederick County action, Crum & Forster, an Arizona corporation with a statutory home office in Arizona and a place of business in New Jersey, filed one of the present actions in this Court on the basis of diversity jurisdiction, seeking a declaratory judgment that it is not obligated to defend or indemnify Gemcraft with respect to the underlying litigation. Crum & Forster specified the following reasons for denial of coverage: (1) the underlying action "does not arise from an 'occurrence' or 'accident' as required by the insuring agreement in the Policies," Compl. ¶ 30; (2) the underlying litigation "does not allege 'property damage' as defined in the Policies," id. at ¶ 31; (3) the

3

underlying litigation "does not allege 'bodily injury' as defined in the Policies," id. at ¶ 32; (4) the underlying action "arises, in whole or in part, from Gemcraft's alleged failure to install required functional radon removal systems, which are ordinary business risks or work product excluded from coverage under the Policies," id. at ¶ 33; and (5) the underlying litigation "arises, in whole or in part, from the actual or alleged dispersal, seepage or migration of radon, which is subject to the Policies' pollution exclusion," id. at ¶ 34.

On May 1, 2014, Nationwide filed suit – which is now consolidated in this action – against Gemcraft and Crum & Forster, seeking the same declaration as Crum & Forster under policies issued to Gemcraft from July 2005, to July 20, 2008. Nationwide, which is an Ohio corporation with a principal place of business in Ohio, also claimed jurisdiction based on diversity of citizenship. Nationwide asserted similar reasons for denying coverage.

After these actions were consolidated, Gemcraft filed the present motion to dismiss or stay under Federal Rules of Civil Procedure 12(b)(7) and 19, contending that Plaintiffs have failed to join necessary and indispensable parties whose joinder would destroy diversity jurisdiction. Specifically, Gemcraft asserts that both Firstline and Erie are indispensable parties, and that both have denied coverage for the underlying

4

litigation. Alternatively, Gemcraft seeks dismissal and/or a stay under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) in favor of the "more complete" Frederick County action.[1]

Rule 12(b)(7) of the Federal Rules of Civil Procedure permits a court to dismiss an action for failure to join a party under Rule 19. In ruling on such a motion, the Court must undertake a two-step inquiry. Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir. 1999). First, the Court must determine whether the party is necessary under Rule 19(a). If the Court determines that the person is necessary, it must then determine whether the person is indispensable to the action under Rule 19(b). If the party is indispensable, meaning that the action cannot proceed in that party's absence, then the case must be dismissed. Owens-Illinois, 186 F.3d at 440. "The burden of proof rests on the party raising the defense – [here, Gemcraft] – to 'show that the person who was not joined is needed for a just adjudication.'" Am. Gen. Life & Acc. Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005) (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1609 (3d ed. 2001)).

---

[1] Because, as discussed further infra, the Court agrees with Gemcraft as to the first ground, it need not consider Gemcraft's alternative argument.

5

The preliminary inquiry is whether the absent insurers are "necessary" to the action. A person is necessary if

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). Here, Gemcraft argues that, at a minimum, Firstline is required to be joined for the reasons stated by the Fourth Circuit in Schlumberger Industries, Inc. v. National Surety Corp., 36 F.3d 1274 (4th Cir. 1994).

In Schlumberger, as here, the insured moved to dismiss on the grounds that certain of its insurers were required to be joined as necessary and indispensable parties, but that joinder of those insurers would destroy diversity. Id. at 1285. The insurers in that case had issued multiple policies covering the same conduct, but for different time periods, that were implicated in the insured's environmental remediation efforts. Noting that permitting the insurers' action to proceed with fewer than all of the insurers subjected the insured to the possibility of "whipsaw," such that it might "wind up with less than full coverage even though it was legally entitled to full coverage," id. at 1286 (emphasis in original), the Fourth

6

Circuit determined that each of the insurers was a necessary and indispensable party. The potential for whipsaw in Schlumberger arose specifically from the issuance of different insurance policies covering different, consecutive policy periods, and the potential for inconsistent judgments should different courts handle different aspects of the case separately. Id. The Court identified three questions indicative of the potential for whipsaw resulting prejudicially inconsistent adjudications: "(1) the legal question of whether the policies provide coverage at all; (2) the legal question of what constitutes a 'trigger' for the coverage to attach; and (3) the factual question of when – if at all – such a trigger occurred." Builders Mut. Ins. Co. v. Dragas Mgmt. Corp., 497 F. App'x 313, 317 (citing Schlumberger, 36 F.3d at 1287-88).

Rule 19(a) instructs that a party is necessary where, "in that person's absence complete relief cannot be accorded among those already parties." Here, Gemcraft asserts that, as in Schlumberger, such relief cannot be granted because of the potential for inconsistent outcomes. Crum & Forster, by contrast, asserts that its suit against Gemcraft is limited in scope to a "declaration only of its rights and obligations under its own insurance contract with Gemcraft," ECF No. 16 at 5, and thus that, "[b]etween those two parties, the Court could certainly 'accord complete relief.'" Id. at 7. Crum &

7

Forster's argument, however, ignores the Fourth Circuit's concerns in Schlumberger regarding the possibility of inconsistent adjudications hindering complete relief.

The present case implicates, at a minimum, the first of the three scenarios leading to the potential for whipsaw – namely, the possibility that different courts, tasked separately with presiding over controversies among the parties, may come to different legal conclusions regarding whether the policies at issue covered the conduct in the underlying litigation.[2] Specifically, Gemcraft asserts that several novel legal issues may be raised in resolving the coverage disputes as to all insurers, including (1) "whether a claim for future medical monitoring constitutes a claim for 'bodily injury[;]'" (2) "whether the 'your work' and 'your product' exclusions are applicable to a claim involving the failure to prevent radon gas from entering a house[;]" (3) whether radon constitutes a pollutant under the policies; and (4) whether the pollution exclusions apply to radon gas claims.  ECF No. 13 at 13. Although the Court expresses no opinion as to whether these questions constitute novel legal issues, it does appear that, to

---

[2] Crum & Forster suggests that the whipsaw concerns raised in Schlumberger are limited to allocation of costs only. See ECF No. 16 at 13.  The text of Schlumberger is clear, however, that the court was also concerned with coverage determinations in the first instance. See Schlumberger, 36 F.3d at 1287-88

resolve the suit, legal determinations regarding the coverage responsibilities and the triggering of exclusions in each of the policies will be necessary.  See, e.g., Builders Mut. Ins. Co. v. Dragas Mgmt. Corp., 497 F. App'x 313, 317 (4th Cir. 2012). Absent Firstline's joinder, therefore, Gemcraft would potentially be subject to inconsistent legal conclusions regarding coverage obligations in the different policies covering the relevant time period.[3]  Accordingly, the Court finds that Firstline[4] is a necessary party.

Having found that Firstline is a necessary party, the Court must next consider whether it is indispensable under Rule 19(b). In considering indispensability, the Court considers

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

---

[3] Crum & Forster appears to take some issue with the fact that Firstline has not yet filed a suit for declaratory judgment. This, however, is immaterial to the issue of whether Gemcraft would be subject to inconsistent adjudications.  Firstline had already declined coverage for the underlying litigation and, at any rate, is now joined in the Frederick County action.  Even if it wasn't joined in Frederick County, it appears highly likely that litigation between Gemcraft and Firstline regarding coverage obligations would ensue.

[4] The Court declines to reach the issue of whether Erie is a necessary and indispensable party.  Unlike Firstline, Erie does not fall squarely under Schlumberger.

Fed. R. Civ. P. 19(b).  Some of the Rule 19(b) factors are closely related to the 19(a)(1) analysis.  Schlumberger, 36 F.3d at 1287-88 (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1604, at 46-47 (2d ed. 1986)).

In support of its contention that Firstline is not an indispensable party, Crum & Forster relies heavily on Pennsylvania National Mutual Casualty Insurance Company v. Perlberg, 268 F.R.D. 218 (D. Md. 2010).  Perlberg involved a declaratory judgment action by a plaintiff insurer against its insured, in which a second insurer, which had issued a policy covering an earlier period and was actively defending the insured, sought to intervene to assert a claim for contribution against the plaintiff insurer.  The court permitted intervention by the second insurer, finding that the second insurer was not indispensable and that there would be "no real prejudice to the original parties if [the second insurer] does not become a party to this lawsuit."  Id. at 224.  Thus, notwithstanding the lack of diversity, the court exercised supplemental jurisdiction over the contribution claim.  See id. at 221 ("[O]ther circuit courts have suggested that supplemental jurisdiction [over nondiverse defendant-intervenors] is proper, so long as the intervening defendant is not indispensable.").

Unlike here, however, the second insurer in Perlberg did not dispute its responsibility to provide coverage to the insured and was, in fact, actively defending the insured. It merely sought contribution, relief which was readily available through a separate lawsuit without any party incurring prejudice for lack of joinder. See id. Moreover, no party in Perlberg had argued that the second insurer was indispensable. Here, by contrast, all three primary insurers – Crum & Forster, Nationwide, and Firstline – have disputed that they bear any coverage responsibility. The risk of inconsistent adjudications is, therefore, much higher in the present case than in Perlberg.

Having determined that Perlberg does not control the analysis, the Court moves to consideration of the Rule 19(b) factors. The first and third factors largely overlap with the above discussion regarding Rule 19(a)(1). Duplicative litigation is likely to result in Firstline's absence, and, indeed, such duplicative litigation already exists in Frederick County. The potential for prejudice to Gemcraft is high, in that it may be subject to inconsistent adjudications with the result that it may "wind up with less than full coverage even though it was legally entitled to full coverage." Schlumberger, 36 F.3d at 1286 (emphasis omitted); see also id. at 1288 (noting that, because the insured was "not the plaintiff" and "did not choose to come to federal court, the potential for prejudice to

11

it weighs that much more heavily in favor of a conclusion of indispensability" (citing Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111 (1968))).

Crum & Forster asserts that the second factor weighs in its favor, in that, at least as this suit pertains to the dispute between Crum & Forster and Gemcraft, this action is limited to determining whether the policy it issued to Gemcraft provides coverage at all under the circumstances presented.  As the Schlumberger court noted, however, "[t]here is no interest that would be furthered by the entrance of such a partial judgment," id. at 1288, and "the only effect of such action would be to encourage the second court to reach a controlling legal issue to follow the result reached by the first, which would prevent the insurers not parties before the first court from [presenting] effective argument on that issue."  Id. at 1288 n.26.  Despite its arguments that its suit is limited in scope, Crum & Forster does not point to any interest that would be served – aside from its own preference of forum – by proceeding in such a manner.

In regard to the fourth factor, the Court is satisfied that the Frederick County or other state action would provide an adequate alternative forum to adjudicate the coverage issues. The coverage issues are, ultimately, a question of Maryland state law.  Although the Court recognizes that such a forum may be less convenient than a federal forum for the out-of-state

insurers, any alleged inconvenience of appearing in the state forum (which, incidentally, was selected by Erie, not Gemcraft) does not outweigh the prejudice to Gemcraft should this action proceed without Firstline.  The Court therefore determines that Firstline is indispensable.

Finally, the Court finds that, in light of the above discussion, dismissal of these consolidated actions is appropriate.  This action is premised on diversity jurisdiction. See Crum & Forster Compl. ¶ 5; Nationwide Compl. ¶ 6.  No federal question has been raised.[5]  "To sustain diversity jurisdiction there must exist an 'actual,' 'substantial,' controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all the parties on the other side."  Indianapolis v. Chase Nat'l Bank of City of New York, 314 U.S. 63, 69 (1941).  It is the court's duty "to look beyond the pleadings and arrange the parties according to their sides in the dispute."  Id.  In doing so, the court must first "determine the primary issue in the controversy," and, second, "align the parties according to their positions with respect to the primary issue."  U.S. Fidelity & Guar. Co. v. A & S Mfg. Co., 48 F.3d 131, 133 (4th Cir. 1995).

---

[5] The action arises under the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  Jurisdiction under the Act is, however, discretionary.  See, e.g., Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 421 (4th Cir. 1998).

In filing the present consolidated actions, it was Crum & Forster's and Nationwide's respective principal purposes to disclaim their respective duties to defend and duties to indemnify Gemcraft for the underlying litigation.  Firstline – although it has not sought intervention – also disclaims responsibility to Gemcraft for the underlying litigation.  Thus, were Firstline to be joined as a party, it would be aligned with the insurer plaintiffs.  Because both Firstline and Gemcraft are citizens of Maryland, however, diversity would be destroyed. See, e.g., Dragas, 497 F. App'x at 316.  Dismissal of these consolidated actions is therefore appropriate.

A separate order shall issue.

>                         /s/
>     _____
>     William M. Nickerson
>     Senior United States District Judge

DATED: July 28, 2014